IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID BATKINS,

    Plaintiff,

v.     Civil Case No.: SAG-19-1541

CSX TRANSPORTATION, INC.,

    Defendants.

**MEMORANDUM OPINION**

Plaintiff David Batkins ("Batkins") filed suit against his former employer, Defendant CSX Transportation, Inc. ("CSX"), asserting a total of six claims arising under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 623 *et seq.*, and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann. § 20-606. ECF 1. CSX has filed a Motion to Dismiss Counts II, IV, V, and VI of Plaintiff's Complaint, ECF 16, along with a supporting memorandum of law (collectively "Motion").[1] ECF 16-1. Batkins has filed an opposition ("Opposition"), ECF 17, and CSX has filed a reply ("Reply"), ECF 18. I have considered all of the filings, and find that

---

[1] In the Opposition, Batkins "withdrew" the FEPA claims in Counts IV, V, and VI of the Complaint. ECF 17 at 1 n.1. Accordingly, those claims will be dismissed. Without specifying the legal grounds justifying such an award, CSX requests an order of attorney's fees, citing opposing counsel's failure to respond to two emails allegedly requesting that Batkins amend his complaint to withdraw those three counts. ECF 16-1 at 4, ECF 18 at 1. To the extent CSX believes it has legal authority to support a request for attorneys' fees on that basis, it should file a motion citing that authority and attaching any relevant evidence, including the emails in question and the billing records for the fees it seeks relating to the two paragraphs of its Motion seeking to dismiss those three claims. Plaintiff would then be entitled to an opportunity to respond, both as to the appropriateness of any award of attorneys' fees and as to the amount sought.

no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, CSX's motion will be granted.

**Factual Background[2]**

CSX hired Batkins as a Special Agent in 2008, when he was approximately 48 years old. ECF 1 ¶¶ 8, 9. CSX negotiated to pay Batkins a starting salary of $57,500, although it had paid younger Special Agents a starting salary of $60,000. ECF 1 ¶¶ 10, 11. On March 24, 2011, CSX promoted Batkins to the position of Special Agent in Charge, and increased his salary to $80,000. ECF 1 ¶ 13.

On August 31, 2012, Deputy Chief Robert Flake circulated an email to CSX's hiring managers, which stated "[I]t has always been our goal to hire the best candidate taking into account all factors. We (the department) found during the CALEA demographic study that recent new hires are of an older age and thus the employment expectation cycle is shorter vs. the more preferred longer cycle; case in point our most recent 2 Northern Region new hires." ECF 1 ¶ 15. In June, 2013, CSX partnered with Johns Hopkins University to create a training program entitled "Johns Hopkins School of Railroad Police Leadership." ECF 1 ¶ 18. CSX invited certain employees to attend the training and to receive immediate promotions upon completion. ECF 1 ¶ 19. Batkins was not invited to attend the training, and believes the opportunity was offered to young Special Agents in Charge. ECF 1 ¶¶ 20, 21.

At a meeting in early 2014, CSX Vice President Skip Elliot made a comment suggesting that he should not hire "old guys," because they do not want to perform certain tasks. ECF 1 ¶¶ 23-24. In February, 2015, Batkins received a performance rating of "below expectations," based

---

[2] The facts are derived from Batkins's Complaint, ECF 1, and are accepted as true for purposes of this motion.

on allegations "that [he] delegated too many responsibilities." ECF 1 ¶ 25. Following a grievance, Batkins's rating was vacated and replaced with "meets expectations." ECF 1 ¶ 26-27.

In March, 2015, CSX Police Chief Jacqueline Litzinger audited Batkins's station and gave it a passing rating. *Id.* ¶ 28. That same day, Deputy Chief Powers advised Batkins that he would be placed on administrative leave, and could not serve as a Special Agent in Charge until he received a Maryland railroad police commission. *Id.* ¶¶ 29-30. At the time of his promotion in 2011, Chief Litzinger knew that Batkins had been credentialed only in Virginia. *Id.* ¶ 32.

Batkins contacted the Maryland State Police to inquire about obtaining a commission, but Chief Litzinger advised him that his contact with the Maryland State Police violated CSX's protocol. *Id.* ¶ 35. Batkins next requested to attend commission training at the Prince George Academy, but his request was denied. *Id.* ¶¶ 36-37. Instead, Batkins attended a more physically demanding training at the Washington Metropolitan Area Transit Authority School. *Id.* ¶ 37. Batkins believes that younger Special Agents were allowed to attend commission training programs of their choosing. *Id.* ¶ 38.

While Batkins's training was ongoing, CSX placed him on a three-month Performance Improvement Plan ("PIP"), which required him to ride full ten-hour shifts with each officer under his command. *Id.* ¶¶ 40-41. Subsequently, Chief Litzinger advised Batkins that being present for the majority of a shift would suffice. *Id.* ¶ 43. However, on November 10, 2015, CSX fired Batkins, citing his "resistance" to complying with the PIP, because he had failed to complete ten-hour shifts with each officer. *Id.* ¶ 45.

**Legal Standard**

In this motion, CSX seeks dismissal of Count II of Batkins's Complaint, which alleges "Pay Discrimination in Violation of the ADEA." ECF 1 at 7. Under Rule 12(b)(6), a defendant

may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (Agee, J., concurring), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (*per curiam*).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a

4

complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss,

"'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004).

Accordingly, when resolving a Rule 12(b)(6) motion, a court may consider certain exhibits, without converting the motion to dismiss to one for summary judgment. *See Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see also U.S. ex rel. Oberg*, 745 F.3d at 136; *Anand*, 754 F.3d at 198; *Am. Chiropractic Ass'n*, 367 F.3d at 234; *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint

and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, and *not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

In this case, Batkins's May 25, 2016 EEOC Charge was referred to within and was integral to the Complaint, and there is no dispute about its authenticity. *See* ECF 1 ¶ 6; ECF 18-1; *see also Davidson v. Sarnova,* Civil No. JKB-17-1067, 2017 WL 3581999 at *2 n. 2 (D. Md. Aug. 18, 2017) ("Indeed, courts in this district have consistently found that even under the strict demands imposed by Rule 12(b)(6), an EEOC charge not attached to a complaint may be considered without converting the motion into one for summary judgment.") (citing *White v. Mortg. Dynamics, Inc.,* 528 F. Supp. 2d 576, 579 (D. Md. 2007)). Accordingly, I will consider the contents of Batkins's EEOC Charge, and treat them as true, in adjudicating CSX's motion to dismiss.

**Analysis**

Count II of the Complaint contains the following allegations:

> 53. At all times relevant to this complaint, Plaintiff was over the age of 40.
>
> 54. Plaintiff's salary as a Special Agent was lower than younger Agents who performed the same or substantially similar job duties.
>
> 55. As a direct and proximate result of Defendant's violations of the ADEA's prohibitions against compensation discrimination by paying Plaintiff a lower salary than younger employees, Plaintiff has suffered significant damages. . .

ECF 1 ¶¶ 53-55. Those allegations match the allegations in the Statement of Facts section of the Complaint, which allege that Batkins was paid less than "younger Special Agents under the age of

7

40" from his hiring in 2008, through his promotion to Special Agent in Charge on March 24, 2011. *Id.* ¶¶ 10-13. Notably, the Complaint contains no factual allegations comparing Batkins's salary as a Special Agent in Charge to any other individuals. Additionally, allegations that he may have been subjected to other forms of bias or discriminatory treatment during his employment do not establish an ongoing discrepancy in pay. Thus, Plaintiff's contention that "he sufficiently pled that Defendant paid him discriminatorily during his employment in its entirety" is unavailing. *See* ECF 17 at 3.

Furthermore, Batkins's EEOC charge was untimely, as it pertains to his allegations that he received lower pay than younger individuals between 2008-2011. As noted above, Batkins filed his EEOC charge on May 25, 2016. ECF 18-1. Because Maryland is a deferral state, a litigant must file a charge within 300 days of an alleged unlawful practice. *See* 29 U.S.C. § 626(d); *EEOC v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001) ("In a deferral state such as Maryland, a charge is timely if it is filed with the Commission within 300 days of the last alleged act of discrimination and served on the company within ten days of being received by the EEOC."). Because Plaintiff's EEOC charge only alleges pay discrimination through 2011, his 2016 charge was filed well past the 300-day deadline. Without a timely EEOC charge, Batkins's ADEA unequal pay claim must be dismissed. *See* 29 U.S.C. § 626(d)(1).

In the alternative, Plaintiff requests leave to file an amended complaint to clarify that his unequal pay claim persisted throughout his employment. ECF 17 at 3. CSX contends that leave should be denied, because Batkins "did not allege in his Charge of Discrimination that he was paid less as a Special Agent in Charge than other Special Agents in Charge, at least not after 2012 when he alleges that he received an adjustment in pay to better align his pay with other Special Agents in Charge." ECF 18 at 3. As such, CSX argues that granting leave to amend would be futile. *See*

8

*Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). The relevant allegations in Batkins's May 25, 2016 EEOC charge are as follows:

> 5. When I was promoted to Special Agent in Charge on March 24, 2011, I was given a salary of $80,000 with a 17.5% cost of living adjustment, plus an opportunity to earn a bonus. The government cost of living adjustment for the Baltimore area at that time was 24.22%.
>
> 6. After approximately one year, Respondent made an adjustment of about $2,500 to my base salary to "better align my pay with other Special Agents in Charge." At this point, I knew that I had been being underpaid and felt as though my age was the reason for that discrepancy.

Accepting those allegations as true and viewing them in the light most favorable to Plaintiff, he was paid less than other Special Agents in Charge for about one year following his promotion, or until sometime in 2012. The time between 2012 and 2016 still well exceeds the 300-day period allowed for filing an EEOC charge. Accordingly, even if Batkins's allegations in his EEOC charge were to be incorporated into an amended complaint, his pay-related claim would be time barred because his EEOC charge was untimely filed. Batkins does not appear to have brought any other factual allegations, relating to his pay between 2012 and his termination in 2015, before the EEOC.

Although I am unaware of any other EEOC proceedings or any other procedural basis that might permit Batkins to file a viable ADEA unequal pay claim, I will dismiss Count II without prejudice. However, I will not grant him leave to amend at this time. If Batkins believes he has sufficient evidentiary grounds to resuscitate the claim, he can file a separate motion for leave to amend, describing how the amended claim can withstand a motion to dismiss.

**Conclusion**

For the reasons set forth above, I shall grant CSX's Motion to Dismiss, ECF 16. I dismiss Count II without prejudice, and dismiss Counts IV, V, and VI with prejudice. A separate Order follows.


Dated: October 9, 2019                                      /s/
                                                  Stephanie A. Gallagher
                                                  United States District Judge