IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DAVID BATKINS, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-19-1541 |
| | * | |
| CSX TRANSPORTATION, INC., | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff David Batkins ("Plaintiff") filed a Complaint against his former employer, CSX Transportation, Inc. ("CSX"), alleging that he was subjected to a hostile work environment and was discriminated against on the basis of his age. ECF 1. Discovery is now concluded. CSX filed a motion for summary judgment, ECF 37, which I have reviewed along with the relevant exhibits, opposition, and reply. ECF 42, 43. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, I will grant CSX's Motion.

**I.  FACTUAL BACKGROUND**

The facts contained herein are taken in the light most favorable to Plaintiff, the non-moving party. Plaintiff served for approximately 27 years as a police officer in Virginia. ECF 42-2 at 33:18-21-34:1-7, 34:12-21-35:1-4. CSX hired Plaintiff as a Special Agent in 2008, and he worked at an office in Richmond, VA. *Id.* at 39:12-20. In 2011, CSX promoted Plaintiff to serve as Special Agent in Charge of the Baltimore Division, which spanned a wide swath of the Mid-Atlantic region. *Id.* at 46:9-15. CSX's then-Chief of Police, Jacqueline Litzinger, told Plaintiff that he would have to relocate immediately to the Baltimore area, but she agreed that he could maintain his Virginia police commission. ECF 42-3 ¶ 5; ECF 42-2 at 94:7-8.

In August, 2012, then-Deputy Chief Bob Flake sent a group email within the department regarding a demographic study of hiring practices. ECF 37-13. The email stated that the department "found during the CALEA demographic study that recent new hires are of an older age and thus the employment expectation cycle is shorter vs. the more preferred longer cycle[.]" *Id.* The email noted that CSX "will be looking at length of service expectations moving forward." *Id.* When Chief Litzinger responded that it might be better to refer to "career length" instead of "age," Deputy Chief Flake responded, "You got the point I am sure. . ." *Id.*

In or around January, 2013, during a briefing about low morale, a Supervisory Special Agent named Lee Mollman remarked, "it's these old guys, Skip; you want them to wear uniforms and drive marked cars; they don't want to do that." ECF 42-3 ¶¶ 35-36. CSX's Vice President, Skip Elliott, said something to the effect of, "yeah, that's why I shouldn't hire them." *Id.* ¶ 38.

In or about July, 2014, Deputy Chief Greg Powers became Plaintiff's direct supervisor. *Id.* Powers first evaluated Plaintiff's performance in early 2015 and rated him "sometimes achieved expectations." ECF 42-4. Plaintiff disagreed with Powers's ratings, particularly as to two substantive areas in which Powers had rated Plaintiff as "developing." ECF 42-3 ¶¶ 9-10. Plaintiff grieved the rating, and Chief Litzinger changed the overall rating to "achieved expectations." ECF 42-5.

In March, 2015, following an audit, CSX supervisors, including Powers, learned that Plaintiff had never obtained a Maryland Railroad Police Commission ("MRPC"). *See* ECF 37-8 (showing that audit revealed appropriate certifications and commissions for all officers except Plaintiff). Powers suspended Plaintiff's police powers until he could obtain an MRPC and restricted him to administrative tasks. ECF 42-3 ¶ 15. Plaintiff contacted a friend in the Maryland State Police to determine whether there were faster ways to obtain the MRPC, other than attending

the generally required training.  *Id.* ¶ 22.  Upon learning of that contact, Chief Litzinger informed Plaintiff that he should not "take shortcuts" in obtaining the legal right to work in the state.  ECF 37-7.  Also, Plaintiff suggested that he could move back to Virginia to avoid the need to come into compliance with the MRPC requirement.  ECF 42-3 ¶ 19.  Plaintiff also offered to accept a demotion and be reassigned to Virginia as a Special Agent.  *Id.* ¶ 20.  CSX declined the various alternatives Plaintiff suggested.  *Id.* ¶¶ 23-26.  Instead, it required Plaintiff to attend a Washington Metro Transit Administration (WMATA) training to meet the MRPC requirements, though it excused him from the physical component of the training.  *Id.*

In the spring or summer of 2015, Powers met with Plaintiff to discuss his performance goals for 2015.  *Id.* ¶ 11.  Powers instructed Plaintiff to ride entire ten-hour shifts with each of the agents in his division, once per quarter.  *Id.* ¶ 12.  Plaintiff contended that the requirement was unreasonable given the geographic scope of his district, and that such intensive supervision was not required of other division commanders.  *Id.* ¶ 13.  Chief Litzinger, who attended the meeting, agreed with Plaintiff and told Plaintiff that he could spend just part of a working day with each agent.  *Id.* ¶ 14.

In or about June, 2015, Chief Litzinger was succeeded by a new chief, John Walsh.  ECF 37-2 at 116:13-16; ECF 42-3 ¶ 27.  On or about July 28, 2015, Powers and Chief Walsh issued Plaintiff a mid-year review and Performance Warning Letter.  ECF 37-9; ECF 37-10.  The mid-year rating assessed Plaintiff as "developing" in 7 of the 9 Competencies and "below target" as to 4 of 7 Performance Goals.  *Id.*  Again, Plaintiff believed the assessment to be unfair and unreasonable.  ECF 42-3 ¶¶ 29-30.

Following the Performance Warning Letter, Powers continued to criticize Plaintiff's performance and to impose what Plaintiff believed to be unfair demands.  *Id.* ¶ 31.  For example,

Powers scheduled a meeting with Plaintiff during the time of his WMATA training. *Id.* Plaintiff told Powers that he felt he was being treated differently and intended to "fight" the way he was being treated. *Id.* ¶ 32.

From August 11 to September 7, 2015, Plaintiff's performance warning appraisal reports were generally satisfactory. *See* ECF 37-11. However, in a report dated September 17, 2015, Powers alleged that Plaintiff had "abandoned" his team by taking vacation without advising his subordinates or making arrangements for coverage. *Id.* at 14-15. In that same report, Powers alleged that Plaintiff had asked him to write a letter confirming that he was an employee "in good standing" for a job application, which could not be done due to his suspended police powers and his ongoing performance warning. *Id.* Plaintiff and Powers had a disagreement about the request for the letter. *Id.* Finally, in an appraisal form dated November 2, 2015, Powers alleged that Plaintiff had misrepresented whether he was performing the ride-alongs with his supervisees. *Id.* at 25-26. Powers again insisted that Plaintiff was supposed to ride-along for entire ten-hour shifts, instead of shorter segments. *Id.*

During the next few weeks, Plaintiff used bereavement leave after the death of his brother. *Id.* On November 10, 2015, about two months before the year-end rating period, Powers met with Plaintiff and terminated his employment. ECF 37-2 at 154:7-21.

## II.  LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th

Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

**III.    ANALYSIS**

Two counts remain from Plaintiff's original Complaint: (1) discriminatory discharge in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("the ADEA"); and (2) hostile work environment, also in violation of the ADEA.  Each claim is discussed below.

   **A.  Discriminatory Discharge**

Plaintiff suggests that he was terminated on the basis of his age.  The ADEA provides that "[a]ll personnel actions affecting [certain federal] employees . . . who are at least 40 years of age . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).  Similarly, section 4(a)(1) renders it unlawful for private-sector employers "to discharge any individual . . . because of such individual's age."  *Id.* § 623(a)(1).  To establish an ADEA disparate treatment claim, a plaintiff must prove that age was the "but-for" cause of his employer's adverse decision. *See Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 176 (2009) (citing *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 652-55 (2008) (recognizing that the phrase, "by reason of," requires at least a showing of "but for" causation (internal quotation marks omitted)); *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 63-64, and n. 14 (2007) (observing that "[i]n common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition" and that the statutory phrase "based on" is equivalent to "because of" (internal quotation marks omitted)).

Here, Plaintiff has adduced insufficient evidence that his age was the but-for cause, or even a motivating cause, of his termination.  His sole direct evidence of discriminatory animus consists of two general comments about hiring older individuals, made years before his termination, by persons who were not involved in the eventual decision to terminate him in 2015.[1]  Those

---

[1] The only connection Plaintiff proffers between those incidents and his termination is that one of the participants in one of the two conversations, Lee Mollman, may have been promoted to replace

comments bear no nexus to his termination. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) ("Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action."); *see also Chang Lim v. Azar*, 310 F. Supp. 3d 588, 602 (D. Md. 2018) ("[A] supervisor's discriminatory animus may support liability only if the supervisor was, in effect, principally responsible for, or the actual decisionmaker behind, the action.").

In the absence of any direct evidence that age discrimination affected his termination, Plaintiff must rely on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish a claim of discriminatory treatment under the ADEA. That framework requires a plaintiff to establish a prima facie case of discrimination, which requires proof of "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). If a plaintiff meets his burden to establish a prima facie case of discrimination, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the disputed employment action. *See Texas Dep't. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255-56 (1981). Where a defendant successfully rebuts the presumption raised by the plaintiff's prima facie case, then the plaintiff has the burden of proof to establish "that the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination." *Id.* at 253. Although *McDonnell Douglas* involved a claim of racial discrimination in violation of Title VII, the Fourth Circuit has used its framework to consider cases involving ADEA age discrimination claims. *See, e.g.*, *Westmoreland v. TWC*

---

Plaintiff, based on an entry on his "LinkedIn" page. ECF 42-3 ¶ 39. Mollman, obviously, was not one of the decisionmakers involved in terminating Plaintiff, and thus his motivation is not relevant.

*Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019); *Warch*, 435 F.3d at 513. *But see Gross*, 557 U.S. at 175 n.2 (stating that the Supreme Court "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . utilized in Title VII cases is appropriate in the ADEA context").

Here, even assuming that the *McDonnell Douglas* framework applies such that Plaintiff can attempt to prove his case via indirect evidence, he is unable to establish a prima facie case of disparate treatment, because he has not shown "different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190. Plaintiff argues generally that Powers's evaluation of his work performance was unfair. However, it is well-established that it is the perception of the employer, as decisionmaker, that is relevant to the analysis of work performance. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (noting that it "is the perception of the decisionmaker which is relevant, not the self-assessment of the plaintiff."). He argues that Powers unreasonably required him to ride full ten-hour shifts with his supervisees but adduces no evidence that any younger supervisors were subject to a different requirement. The fact that Chief Litzinger had not required ten-hour ride-alongs during her tenure did not prevent Powers and Chief Walsh from enforcing that requirement after her departure. Finally, Plaintiff speculates that two other employees, Nicole Ferry and Anna Dodson, were not required to obtain commissions in the states where they worked. ECF 42-3 ¶¶ 40-45. However, he provides no admissible evidence to support those contentions, instead relying on his "understanding" and his "belief." *Id.* Such statements do not fulfill the requirements of Rule 56, because they are not based on personal knowledge and do not set out facts that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(4).

In contrast, CSX has provided the sworn affidavit of Powers, which attests that Ferry was always properly commissioned in the state in which she resides. ECF 43-1 ¶ 3. Moreover, Powers attests that another Special Agent, Anna Dapson (not "Dodson" as alleged by Plaintiff), obtained the appropriate commissions to work in the states to which she was assigned. *Id.* ¶ 4. Thus, Plaintiff has not shown that any other Special Agents were allowed to keep working without obtaining their required commissions. Moreover, CSX has provided a thoroughly documented reason for Plaintiff's termination unrelated to his failure to obtain a Maryland police commission. Instead, CSX points to a series of events occurring after he had received a performance warning, including taking vacation without informing his subordinate special agents and making arrangements for coverage, and misleading Powers about whether he was riding an entire shift with each agent in his division. ECF 37-11 at 25-26. Plaintiff has not alleged or established that any other employees were retained in similar situations. Ultimately, because Plaintiff cannot meet his burden to establish a prima facie case of discrimination by showing that he was treated differently than a similarly situated younger employee—let alone show that the proffered legitimate explanation for his termination was pretextual—summary judgment is warranted as to his discriminatory discharge count.

### B. Hostile Work Environment

In Count Three, Plaintiff alleges that CSX subjected him to a hostile work environment, which exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). In order to proceed to trial on this claim, Plaintiff must proffer evidence that: (1) he experienced unwelcome harassment; (2) the harassment was based on his

9

age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The severity and pervasiveness of harassment is assessed "from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal quotation marks omitted).

Plaintiff's opposition illustrates a lack of any evidence to establish the second factor. He lists a series of negative performance reviews and criticism he received and then argues that Powers's actions "demonstrate a hostile environment in which any reasonable person would feel they could do no right and, no matter what they did, they were destined to fail." ECF 42 20-22. But the ADEA does not guarantee workers a fair evaluation, a good relationship with their supervisors, or a pleasant work environment. It prohibits only mistreatment and harassment on the basis of age. Plaintiff cites no evidence which would permit a factfinder to ascertain or infer discriminatory animus on Powers's part. No age-based harassment occurred. The two isolated incidents in which other employees made age-related remarks (without making direct reference to Plaintiff) occurred well before Powers even became Plaintiff's supervisor, and do not seem to be encompassed in his hostile work environment claim. *See id.* at 21 ("Plaintiff has shown an escalating pattern of harassment when he was unfairly and falsely criticized from at least January 2015 until his termination in November 2015."). At least some evidence that the employee experienced harassment based on age is required to mount a viable ADEA hostile environment claim. *See Bass*, 324 F.3d at 765 (concluding that allegations "of a workplace dispute regarding [plaintiff's] reassignment and some perhaps callous behavior by her superiors ... do not describe ...

severe or pervasive gender, race, or age based activity"). In the absence of any such evidence here, summary judgment must be granted for CSX.

## IV. CONCLUSION

For the reasons set forth above, CSX's Motion for Summary Judgment, ECF 37, will be GRANTED, and this case will be closed. A separate Order follows.


Dated:  March 18, 2021                                              /s/
                                                        Stephanie A. Gallagher
                                                        United States District Judge